OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA AND OLIC HOLDING CORPORATION, PETITIONERS v. JOHN R. INGRAM, COMMISSIONER OF INSURANCE, STATE OF NORTH CAROLINA

No. 7710SC861

(Filed 7 December 1977)

1. **Insurance § 1— domestic insurance company—plan of stock exchange to bring under holding company structure—arbitrary and capricious disapproval by Commissioner of Insurance**

    The record supports the trial court's findings and its conclusion that the Commissioner of Insurance acted arbitrarily and capriciously when he disapproved a proposed plan of exchange of stock by which a domestic insurance company would be brought under a holding company type of corporate structure where it shows that for many weeks after the documents were available to him, the Commissioner failed even to read the petition and proposed plan of exchange of stock, the transcript of the public hearing conducted thereon, or the written recommendation made by the professional staff of the Department of Insurance; that he delayed and failed to render any decision until compelled to do so by a court order; that he then issued an order disapproving the plan on the basis of findings of fact, some of which are totally unsupported by any evidence while others are of only remote relevance; and that he refused to make findings of fact favorable to petitioners even though such findings are fully supported by a mass of convincing and uncontradicted evidence.

2. **Administrative Law § 5— judicial review of agency decision—Administrative Procedures Act—adequate review under another statute**

    Under the statute providing that any person aggrieved by a final agency decision who has exhausted all administrative remedies is entitled to judicial review under Art. 4 of the Administrative Procedures Act "unless adequate procedure for judicial review is provided by some other statute," G.S. 150A-43, an "adequate procedure for judicial review" exists only if the scope of review is equal to that under Art. 4 of Administrative Procedures Act, G.S. Ch. 150A.

3. **Administrative Law § 5; Insurance § 1— plan of exchange of stock—disapproval by Commissioner of Insurance—judicial review under Administrative Procedures Act**

    The scope of judicial review of an order of the Commissioner of Insurance disapproving a plan of exchange of stock by which a domestic insurance company would be brought under a holding company type of corporate structure is

that provided in Art. 4 of G.S. Ch. 150A rather than that provided by G.S. 58-9.3, since the scope of review provided in Art. 4 of G.S. Ch. 150A is substantially broader than that provided by G.S. 58-9.3.

**4. Administrative Law § 8; Injunctions § 3; Insurance § 1— plan of exchange of stock— mandatory injunction requiring approval by Commissioner of Insurance**

A superior court judge did not exceed his power and authority in issuing a manadatory injunction requiring the Commissioner of Insurance to approve petitioners' plan of exchange of stock by which a domestic insurance company would be brought under a holding company type of corporate structure where the Commissioner abused the powers granted to him by the General Assembly by arbitrarily and capriciously disapproving the plan of exchange when all of the competent evidence showed that petitioners were entitled to have the plan approved.

APPEAL by respondent from *Godwin, Judge*. Order entered 27 September 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 17 November 1977.

On 8 June 1977, Occidental Life Insurance Company of North Carolina (Occidental), a domestic capital stock insurance company, and Olic Holding Corporation (Holding Corp.), a domestic stock corporation, filed with the respondent, the Commissioner of Insurance of North Carolina, a petition pursuant to the provisions of Art. 6A of G.S. Ch. 58 to obtain approval of a proposed Plan of Exchange whereby, upon consummation of the Plan, shares of Occidental owned by assenting stockholders of Occidental would be deemed to have been exchanged for a like number of shares of Holding Corp. on a share for share basis, with the result that Occidental would become a wholly owned subsidiary of Holding Corp. and the assenting shareholders of Occidental would become the shareholders of Holding Corp., with each such stockholder having, as among all such stockholders, the same proportionate interest in Holding Corp. as each had previously held in Occidental. The Plan also provided for the reorganization of some of the first and second tier subsidiaries of Occidental so that these would become subsidiaries of Holding Corp. rather than of Occidental. With their petition, the petitioners submitted to the Commissioner of Insurance three certified copies of their proposed Plan of Exchange, as adopted by their respective boards of directors, together with the financial statements and other data and documents required by G.S. 58-86.4(2). The petition contained allegations detailing the present corporate structures and stock ownership of each of the petitioners and of each of the present

subsidiaries of Occidental, the corporate reorganization which would be effected upon consummation of the Plan, and the advantages which would result from implementation of the Plan. Among these advantages as alleged in the petition were the following: Because of the size and diversity of operations within the present Occidental group of companies, a holding company type of organization would permit a more effective control by the board of directors of the Holding Corp. over the capital and personnel resources of the entire group. The management of the operating companies would have clear responsibility and authority for operating results, and clear lines of authority would be established between the Holding Corp. board of directors and the managements of the operating companies. A qualified staff in the Holding Corp. would provide its board with independent evaluations of operating results. Internal auditing would be made more effective by making that a function of the Holding Corp., thus giving the audit function independence from operating company management. Structurally, the business and financial risks among subsidiaries would be compartmentalized, thus reducing the chance that adverse results of one of the operating subsidiaries could have a major adverse effect on other operating companies. The proposed reorganization would permit the Holding Corp. to file consolidated federal income tax returns with its nonlife insurance company subsidiaries, something which is not permitted to life insurance companies under present federal income tax laws, thereby making it possible to offset losses in one such subsidiary against gains in another and permitting the passage of dividends from such subsidiaries to the parent Holding Corp. without a double tax when received by the parent. The proposed reorganization would provide a clearer organizational structure which would be more easily understood by shareholders and the public. The new structure would facilitate the acquisition or commencement of new insurance-related operating companies which would be directly under the Holding Corp. board and its staff. The proposed reorganization would result in a structure more appropriate to the current circumstances of the Occidental group of companies and more responsive to the competitive environment now taking shape.

As required by G.S. 58-86.4(2), a public hearing on the petition was scheduled to be held on 19 July 1977, and notice of this

hearing was duly published in newspapers of general circulation in six cities of this State. Written notice of the hearing was also mailed to the approximately 2400 stockholders of Occidental.

On 19 July 1977 the noticed public hearing was held before Deputy Commissioner W. Kenneth Brown. At this hearing the petitioners presented evidence to support the allegations in their petition and to establish that the proposed Plan complied in all respects with all statutory requirements and criteria for approval. No evidence was presented to the contrary. No one appeared in opposition to approval of the Plan. At the conclusion of the hearing, the hearing officer directed that the record show that all persons who wished to be heard had been heard, and he announced that he would give the matter his prompt attention as rapidly as the staff should prepare its recommendation.

On or about 18 August 1977 the Insurance Department staff gave its recommendation fully approving the Plan of Exchange. No action was taken on this staff recommendation by the hearing officer or by the Commissioner of Insurance. After the attorney for petitioners expressed concern to members of the Insurance Department staff because of the delay in receiving any decision on petitioners' proposed Plan, the hearing officer met with representatives of petitioners in the office of the Commissioner of Insurance on 6 September 1977. At this meeting the hearing officer informed petitioners' counsel that matters had come to his attention concerning investment problems which had been experienced by Occidental as disclosed by an Insurance Department examination conducted in 1972, that he understood petitioners' counsel was objecting to anything being added to the record, and that in view of these matters he was not going to enter an order in this proceeding. He also informed petitioners' representatives that the Commissioner of Insurance had consented to hear petitioners' counsel on 22 September 1977.

On 7 September 1977 petitioners filed suit in the Superior Court in Wake County against the hearing officer and the Commissioner of Insurance seeking an order pursuant to G.S. 150A-44 compelling some action by defendants either approving or disapproving petitioners' proposed Plan of Exchange. On 12 September 1977 petitioners took the depositions of the hearing officer and of the Commissioner of Insurance. In his deposition, the hearing officer testified that prior to holding the hearing on 19 July 1977,

he had not read the petition which had been filed on 8 June 1977 and that he did not know until the morning of the hearing that he was to be the hearing officer. In his deposition, the Commissioner of Insurance testified that as of the date of the deposition, 12 September 1977, he had not read the petition which had been filed by petitioners in his office on 8 June 1977, nor had he read the transcript of the public hearing held 19 July 1977 or the recommendation made by the Insurance Department staff.

On 12 September 1977 petitioners filed in their then pending action in the Superior Court and served on the defendants therein an affidavit signed by the local manager of Ernst and Ernst, the independent auditor for Occidental and its subsidiaries. In this affidavit the affiant pointed out certain disadvantages which would result if the reorganization were delayed until some time in 1978 rather than being accomplished at 31 December 1977. Included among the adverse consequences of such a delay would be the elimination of availability by one tax year of over $2,232,000 in loss carryovers to 1979 and 1982, with the possible result that the delay could cost the Occidental group of companies over $1,071,000 in taxes that they would otherwise not be required to pay.

On 15 September 1977 the hearing officer served on the petitioners a proposal for decision disapproving the Plan of Exchange. On 19 September 1977 the petitioners filed written exceptions to this proposal for decision but waived oral argument thereon.

On 19 September 1977 the then pending civil action came on for hearing in the Superior Court upon the return of a show cause order which had been entered therein on 7 September 1977. Plaintiffs presented evidence, including the deposition testimony of the Commissioner of Insurance and of the hearing officer. Defendants did not offer evidence. At the conclusion of the hearing, Judge James H. Pou Bailey entered an order dated 19 September 1977 making findings of fact from which he concluded as a matter of law that defendant Ingram had unreasonably delayed in entering an order either approving or disapproving petitioners' Plan of Exchange and that his failure to enter such an order constituted a wilfull failure by him to carry out the statutory duties of his office. In accord with his findings and conclusions, Judge Bailey granted petitioners' prayer for a mandatory injunction and ordered defendant Ingram, within twenty-four hours, to enter a

written order pursuant to G.S. 58-86.4 either approving or disapproving petitioners' Plan of Exchange. On 20 September 1977 an order was entered, signed in the name of the Commissioner of Insurance by the hearing officer in his capacity as Deputy Commissioner of Insurance. In this order the Commissioner of Insurance made findings of fact, including the following:

7. That the Report on Examination of Occidental Life Insurance Company of North Carolina for the years ending December 31, 1971 and December 31, 1972 indicates that the company had seriously depleted surplus as of December 31, 1971 which was substantially improved by December 31, 1972.

8. That the Annual Statements for the years 1970 through 1976 indicate that management of the company has undergone a number of changes and that since 1970 there have been six different people holding the office of President.

\* \* \*

12. That the holding company organizational framework provides flexibility to management which could seriously hurt the interest of policyholders and that the Plan of Exchange to create the holding company would therefore not be in the public interest.

13. That this great amount of flexibility, in management has caused harm to many North Carolina policyholders of other companies. (e.g., Summit Insurance Company of New York, National American Life Insurance Company of Louisiana, and Standard Life Insurance Company of Oklahoma.)

14. That if approved, this Plan of Exchange would permit such excessive flexibility in the management of Occidental Life Insurance Company as to constitute a hazard to the policyholders.

On these findings, the Commissioner concluded that petitioners' Plan of Exchange is not in the public interest, and accordingly he disapproved the Plan.

The present action was commenced on 20 September 1977 when the plaintiff-petitioners, Occidental and Holding Corp., filed their complaint and petition for review in the Superior Court in

Wake County against the respondent Commissioner of Insurance, alleging that the Respondent had been arbitrary and capricious in his order disapproving their Plan of Exchange in that, among other things, he had made findings unsupported by substantial evidence admissible under G.S. 150A-29, he had considered matters outside of the record of which no notice was given to petitioners, he had been selective and considered only irrelevant matters so removed in time as to be immaterial under G.S. 58-86.4, and he had not considered more current matters which support petitioners' Plan of Exchange and support the fact of petitioners' currently strong financial status. Petitioners prayed that respondent's order be reversed and that a mandatory injunction be issued to compel respondent to enter an order approving their Plan of Exchange in accordance with the evidence presented at the 19 July 1977 hearing. Respondent filed answer denying he had been arbitrary and capricious in entering his order disapproving petitioners' Plan of Exchange and challenging the court's power to order him to approve that Plan.

A hearing in the present action was held on 26 September 1977 before Superior Court Judge A. Pilston Godwin, Jr., upon the pleadings, the exhibits attached thereto, and exhibits filed by petitioners. These exhibits included copies of the original petition and the exhibits thereto as filed by petitioners with the respondent on 8 June 1977, a transcript of the 19 July 1977 public hearing, and copies of the documents and transcripts of the proceedings above referred to. On 27 September 1977 Judge Godwin entered an order in which he found as facts that there was no evidence in the record of the public hearing held on 19 July 1977 of certain matters admittedly considered by the hearing officer, being principally the matters referred to in findings of fact 7, 8, 12, 13, and 14 in the respondent's order entered 20 September 1977 in which he disapproved petitioners' Plan of Exchange, and that respondent had never given notice to petitioners that he was taking official notice of these matters. Judge Godwin also made findings of fact and conclusions of law as follows:

13. The Court finds the following Findings of Fact from the July 19 hearing:

(a) The Plan of Exchange had been thoroughly researched and analyzed by Petitioners to insure that it would

provide management and structural advantages for Petitioners.

(b) The holding company format provides great flexibility which insurance companies need and there are no disadvantages from the utilization of the holding company format.

(c) If a holding company's record shows good growth and earnings, they would be more truly reflected in the price of the holding company stock than of a life insurance company and investors would be more likely attracted to the stock of a holding company than a life insurance company.

(d) The holding company structure provides a clear way of analyzing, on a consolidated basis, what a multi-corporate enterprise is doing and what it is worth.

(e) Under the holding company format, business and financial risks among the subsidiaries of the Occidental Group can be compartmentalized, thus reducing the chance that adverse results in one of the operating subsidiaries will have a major effect on other operating companies.

(f) Of the diversified financial institutions listed in the July 1977 issue of Fortune Magazine, over one half own and operate insurance companies within a holding company format.

(g) The formation of a holding company would benefit Occidental because it would enable Occidental to move much of its nonlife insurance activities from under the life company, (Occidental), would insulate Occidental's surplus from earnings fluctuations of the casualty subsidiaries, and would eliminate a distortion of the surplus of subsidiaries which now exist under allowed and accepted accounting practices.

(h) The holding company format would increase the capacity of the Board of Directors to fulfill their fiduciary responsibilities and to skillfully manage the business of the Group.

(i) Since 1973, Occidental has shown a continuous and consistent increase in surplus and has shown satisfactory statutory earnings.

(j) Occidental had earned in excess of one million dollars after taxes during each of the preceding four years and has earned an "A-Excellent" Rating by A. M. Best & Company.

(k) The equity of Occidental shareholders will be unaffected by the Plan of Exchange.

(l) A strong internal audit function is one of the best ways to properly protect the policyholders and shareholders of a company and that the most effective internal audit is one which exists independent of operating company management.

(m) The property-casualty operations of the Occidental Group have grown substantially in the past few years, and the Plan of Exchange would facilitate the ability of the Occidental Group to attract additional capital because of the structural realignment, thus assuring the continued growth of the property-casualty operations of the group.

(n) The holding company staff would provide critical support for the Board of Directors, helping them to be more effective in their fiduciary responsibilities.

(o) Specialized services such as investment advisory services, data processing services, planning services and others could be more effectively handled under the proposed holding company format.

(p) Carolina Securities Corporation, a Raleigh-based investment house, has recommended the purchase of Occidental's shares subsequent to the adoption of the Plan by the Occidental board to form a holding company.

(q) The exchange of shares would have the effect of increasing competition in the insurance business in North Carolina.

(r) No witness who testified at the hearing opposed the Plan or suggested it did not meet the statutory requirements.

14. The Petitioners have presented an affidavit by Ernst & Ernst and this Court finds pursuant thereto that the delay in the accomplishment of the proposed reorganization after December 31, 1977 could cost Occidental in excess of one million dollars in taxes over the next several years. The

Court further finds that this affidavit was given to the Respondent through his counsel on Monday, September 12, 1977.

15. The Court further finds that the Petitioners must seek and obtain the approval of a number of different regulatory authorities of both state and federal governments subsequent to the granting of any approval by the Respondent.

16. Respondent Ingram has stated under oath and this Court finds that as of September 12, 1977, he had not read the Petition filed by the Petitioners on June 8, and that he had not read the transcript of the July 19 hearing. There is no evidence that he has done so as of the date of this Order. He has admitted under oath and this Court finds that he had not looked at the Notices of Hearing and was not aware that the Petitioners had given notice to its shareholders and policyholders and the public of the July 19th hearing in six newspapers throughout the State of North Carolina. He has not read, considered or written anything in connection with the Petition as of September 12, 1977 and there is no evidence that he has done so as of the date of this Order. The Court further finds that Respondent, at the time he entered his final order, according to his own admission in the Order of September 20, 1977, had not fully studied the records before him.

17. The Plan of Exchange submitted with the Petition is in accordance with the provisions and requirements of Article 6A of Chapter 58 of the General Statutes of North Carolina.

18. Due notice of the public hearing of July 19, 1977 was given, as required by law, and all policyholders, shareholders and other interested persons were given an opportunity to appear at the public hearing and be heard. None appeared.

19. The proposed Plan of Exchange will permit the filing of consolidated income tax returns by OLIC Holding Corporation which could result in substantial tax savings to the policyholders and shareholders of Occidental. The business of insurance will continue to be the primary function of Occidental.

20. The proposed Plan of Exchange will not decrease Occidental's ability to carry on the insurance business.

21. Under the Plan of Exchange, Occidental will continue to be regulated by the North Carolina Department of Insurance.

22. Petitioners will be subject to regulation by the North Carolina Department of Insurance, the Securities and Exchange Commission and the insurance departments of any other jurisdiction in which an insurance business is conducted by Petitioners.

23. No officer, director or employee of Petitioners will receive any fee, commission or any other compensation or valuable consideration for promoting or assisting in the Plan of Exchange except as provided by the Plan.

## CONCLUSIONS OF LAW

Upon the foregoing, the Court enters the following Conclusions of Law.

1. The defendant Ingram has a statutory duty pursuant to the provisions of G.S. Sec. 58-86.4 to enter an Order either approving or disapproving the Plaintiff's Petition filed with him on June 8, 1977.

2. The final Order of Respondent entered on September 20, 1977 was arbitrary and capricious in that, among other things, he considered matters outside the record and he was arbitrarily and unreasonably selective and considered only irrelevant matters so removed in time and relevancy as to be immaterial and did not consider more current matters all of which support Petitioners' Plan of Exchange and support the fact of Occidental's admittedly strong current financial status.

3. The conduct of the Respondent throughout this proceeding has been arbitrary and capricious in that, among other things, he has willfully engaged in a practiced and studied pattern of deliberate, persistent procrastination designed to defeat and deny the rights of the Petitioners and many thousands of Occidental's stockholders and policyholders.

4. The Order of the Respondent of September 20, 1977 and particularly Findings of Fact Nos. 7, 8, 12, 13 and 14, and the Conclusions of Law thereof are arbitrary and capricious and not supported by substantial evidence of record.

5. Respondent Ingram has violated G.S. Sec. 150A-30 by considering matters not in the record before him, and of which no notice was given to Petitioners as required by law.

6. The Plan of Exchange will not adversely effect (sic) the financial stability or management of Occidental or its general capacity or intention to continue the safe and prudent transaction of the insurance business. The interests of the policyholders and shareholders of Petitioners are protected. The terms and conditions of the Plan of Exchange are fair and reasonable and the Plan of Exchange is consistent with law and not in conflict with the public interest.

7. Petitioners have complied with all statutory requirements imposed by G.S. 58-86 et seq. for the effectuation of the Plan of Exchange set forth in their Petition of June 8, 1977, and they are entitled to the Respondent's approval as a matter of law.

8. Petitioners are entitled to a preliminary mandatory injunction commanding the Respondent to enter an order not inconsistent with the Findings of Fact and Conclusions of Law of this Order.

9. Respondents are entitled to the relief as set forth in G.S. Sec. 150A-51 and G.S. Sec. 58-9.3.

10. Unless Petitioners are granted the relief sought immediately, they will be irreparably harmed for which they have no adequate remedy at law.

11. The Respondent has engaged in a deliberate program of persistent procrastination and negligence and he has wilfully failed to carry out the statutory duties of his office, all to the prejudice of the rights of Petitioners, making prompt and affirmative action by this Court necessary.

On these findings and conclusions, the court reversed respondent's order of 20 September 1977 which had disapproved the petitioners' Plan of Exchange, remanded the matter to the

respondent, granted petitioners' prayer for a mandatory injunction, and ordered respondent, within twenty-four hours, to enter a new order not inconsistent with the court's findings of fact and conclusions of law.

From this order of Judge Godwin, the respondent Commissioner of Insurance appealed to the Court of Appeals. On 7 October 1977 this Court entered an order staying Judge Godwin's order pending appellate review by this Court. On 18 October 1977 the North Carolina Supreme Court dissolved the stay order without prejudice to respondent's appeal on the merits.

*Ragsdale, Liggett & Cheshire by George R. Ragsdale, Peter M. Foley, William J. Bruckel, Jr., and Michael A. Swann for petitioners appellees.*

*Attorney General Edmisten by Assistant Attorney General Isham B. Hudson, Jr., for respondent appellant.*

PARKER, Judge.

Two basic questions are presented by this appeal: First, whether the record adequately supports the court's findings and its conclusion that the respondent Commissioner of Insurance acted arbitrarily and capriciously when he disapproved petitioners' proposed plan of exchange, and, if that question be answered in the affirmative, second, whether the court exceeded its power and authority by issuing its mandatory injunction requiring the respondent to approve the plan. We answer the first question in the affirmative and the second in the negative, and accordingly we affirm the trial court's order.

By Ch. 938 of the 1967 Session Laws, our General Assembly enacted Art. 6A of G.S. Ch. 58. That statute sets forth the procedure to be followed when the directors and stockholders of a domestic insurance company with capital stock desire to effect a corporate reorganization so as to bring their company under a holding company type of corporate structure. Such a reorganization may result in very substantial advantages to the domestic insurance company and to its stockholders, as the record in this case clearly demonstrates. By enacting Art. 6A of G.S. Ch. 58, our General Assembly has recognized, and in so doing has established as the public policy of this State, that it is entirely proper for a domestic insurance company and its stockholders to enjoy those

advantages, provided the protective procedures prescribed in the statute are followed. Petitioners in this case have followed all prescribed statutory procedures.

Because there may be circumstances, not shown on the present record, in which such a corporate reorganization might work to the detriment of the domestic insurance company or its shareholders or policyholders, the statute provides that the corporate reorganization can be accomplished only after notice is given to all shareholders and to the public of a public hearing which the Commissioner of Insurance is directed to hold. At such a hearing any interested party has the right to appear and to become a party to the proceedings. The statute, G.S. 58-86.4(2), then provides:

> The Commissioner shall issue a written order approving the plan of exchange as delivered to him by the domestic company and the acquiring corporation and such modification therein as the board of directors of each such corporation shall approve, if he finds (i) that the plan, including all such modification, if effected, will not tend adversely to affect the financial stability or management of the domestic company or the general capacity or intention to continue the safe and prudent transaction of the insurance business of the domestic company, or of the acquiring corporation, if it is a domestic insurance company; (ii) that the interests of the policyholders and shareholders of the domestic company, and, if the acquiring corporation is a domestic insurance company, the policyholders of the acquiring corporation are protected; (iii) that the terms and conditions of the plan of exchange and the proposed issuance and exchange are fair and reasonable; and (iv) that the plan of exchange is consistent with the law and will not conflict with the public interest. If the Commissioner fails to approve the plan, he shall state his reasons for such failure in his order made on such hearing.

> Any order issued by the Commissioner hereunder shall be subject to court review in accordance with the provisions of G.S. 58-9.3.

It will thus be seen that, in the context of the present case, the above quoted portion of G.S. 58-86.4(2) mandates that "[t]he Commissioner *shall* issue a written order approving the plan of

exchange" (emphasis added), if, after holding the prescribed public hearing, he finds four things: (1) that the plan, if effected, will not tend adversely to affect the financial stability or management of the domestic insurance company or its general capacity or intention to continue the safe and prudent transaction of its insurance business; (2) that the interests of policyholders and shareholders are protected; (3) that the terms and conditions of the plan are fair and reasonable; and (4) that the plan is consistent with law and will not conflict with the public interest.

In the present case all of the detailed, complete, and voluminous evidence presented at the public hearing would support a favorable finding on each of the above four things. No shareholder or policyholder appeared at the public hearing in opposition to the plan. Members of the professional staff of the Insurance Department were present and participated in that public hearing. After reviewing the record, this professional staff recommended in writing entry of an order making favorable findings on the above four things. Nevertheless, after all of these proceedings had been completed and after a suit had been commenced in Superior Court to compel him to take some action one way or the other, the respondent Commissioner of Insurance, according to his own testimony given in his deposition taken on 12 September 1977, had never, as of that date, read the original petition or the proposed plan of exchange which had been on file in his office since 8 June 1977, had never read the transcript of the public hearing held by his hearing officer on 19 July 1977, and had never seen the written recommendation prepared by the professional staff of his Department. Yet eight days later, on 20 September 1977, he issued his order disapproving the plan.

The respondent's conclusion in his 20 September 1977 order that petitioner's plan is not in the public interest was based primarily on his Findings of Fact 7, 8, 12, 13, and 14. Finding of Fact No. 7 refers to a "Report of Examination" of Occidental for the years ending 31 December 1971 and 31 December 1972 which, according to the Finding, "indicates that the company had seriously depleted surplus as of December 31, 1971 which was substantially improved by December 31, 1972." The "Report of Examination" referred to was not introduced in evidence at the public hearing held 19 July 1977, and it does not appear in the record before us. Presumably it was a document in the files of

the Insurance Department of which respondent was taking official notice. If so, the respondent failed to comply with G.S. 150A-30 by making this known to petitioners "at the earliest practicable time" as required by that statute. More importantly, if the information in the document was relevant at all to the present inquiry, it was only remotely so as a matter of historic interest. Of far greater relevance were the facts, which respondent chose to ignore, that Occidental has earned in excess of one million dollars after taxes in each of the last four years, that from 1972 to the present it has shown a continuous and consistent increase in surplus, and that at the present time it is in an extremely strong financial condition. Similarly, respondent's Finding of Fact No. 8, that from 1970 through 1976 the management of Occidental has undergone a number of changes and that since 1970 six different people have held the office of President, if relevant at all to the present inquiry, is surely far less relevant than the fact, which is fully established by the record but which respondent chose to ignore, that during the most recent portion of that period Occidental has enjoyed a stable and extremely successful executive management. As to respondent's Findings of Fact 12, 13, and 14, there is simply no evidence in the record on which these could be based. In particular, nothing in the record supports respondent's finding in his Finding of Fact No. 13 that the "great amount of flexibility" in management provided by the holding company organizational framework "has caused harm to many North Carolina policyholders of other companies." The three "other companies" named in this finding are nowhere else mentioned in the entire record before us, and respondent has pointed to nothing which supports this finding. Finally, insofar as respondent's "Findings of Fact" are not factual findings at all but represent merely respondent's opinion as to the inadvisibility of a holding company organizational structure as a matter of public policy, we point out that the General Assembly itself determined the public policy of this State as being not inhospitable to a holding company organizational structure for domestic capital stock insurance companies when it enacted Art. 6A of G.S. Ch. 58, and nothing in the statute grants the respondent any power to change the public policy of this State as adopted by its General Assembly.

[1]   In summary, the evidence in this record shows that for many weeks after the documents were available to him, the respondent

Commissioner of Insurance failed even to read the petitioners' petition, the proposed plan of exchange, the transcript of the public hearing conducted thereon, or the written recommendation made by the professional staff of his own Department; that he delayed and failed to render any decision until compelled to do so by a court order; that he then issued an order disapproving the plan on the basis of findings of fact, some of which are totally unsupported by any evidence while others are of only remote relevance; and that he refused to make findings of fact favorable to petitioners even though such findings are fully supported by a mass of convincing and uncontradicted evidence. We hold that the evidence fully supports the trial court's findings and its conclusion that the respondent acted arbitrarily and capriciously when he disapproved petitioners' proposed plan of exchange.

[2, 3]  We now consider the second question presented by this appeal, whether the trial court exceeded its power and authority by issuing its mandatory injunction requiring the respondent to approve petitioners' plan. We hold that it did not. G.S. 58-86.4(2) provides that any order issued by the Commissioner of Insurance thereunder "shall be subject to court review in accordance with the provisions of G.S. 58-9.3." The scope of judicial review provided by G.S. 58-9.3 is somewhat limited, subsection (c) of that statute providing merely that "[t]he trial judge shall have jurisdiction to affirm or to set aside the order or decision of the Commissioner and to restrain the enforcement thereof." A substantially broader review is provided by G.S. Ch. 150A, our Administrative Procedures Act. G.S. 150A-43, which appears in Article 4, entitled "Judicial Review," of G.S. Ch. 150A, provides that any person aggrieved by a final agency decision who has exhausted all administrative remedies is entitled to judicial review under that Article, "unless adequate procedure for judicial review is provided by some other statute, in which case the review shall be under such other statute." In determining what is "adequate procedure for judicial review," as those words appeared in our former statute, G.S. 143-307, our Supreme Court held that an adequate procedure for judicial review exists "only if the scope of review is equal to that under G.S. Chapter 143, Article 33, 143-306 et seq." Jarrell v. Board of Adjustment, 258 N.C. 476, 480, 128 S.E. 2d 879, 883 (1963). Effective 1 February 1976, G.S. 143-307 was replaced by G.S. 150A-43, and we now hold that "adequate

procedure for judicial review," as those words appear in present G.S. 150A-43, exists only if the scope of review is equal to that under present Article 4 of G.S. Ch. 150A. Since the scope of review provided in Art. 4, G.S. Ch. 150A is substantially broader than that provided by G.S. 58-9.3, we also hold that the scope of judicial review applicable in the present case is that provided for in Art. 4 of G.S. Ch. 150A.

G.S. 150A-51, entitled "Scope of review; power of court in disposing of case," provides:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:

> *    *    *

> (5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

> (6) Arbitrary or capricious.

> If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification.

[4] Respondent's counsel has correctly pointed out in his brief that "[t]he General Assembly has vested the Commissioner of Insurance, not the Superior Court, with the power to determine if the proposed exchange of stock meets the standards prescribed by G.S. 58-86.4." However, the powers conferred upon the Commissioner of Insurance by G.S. 58-86.4 are not so broad as to permit him arbitrarily to refuse to make findings favorable to petitioners when all of the evidence supports such findings and there is no competent evidence to the contrary. A clearly implied condition upon the powers conferred upon the Commissioner by G.S. 58-86.4 is that he will exercise them in good faith. If, as here, he acts arbitrarily, petitioners are not left helpless, nor are the courts powerless to grant them adequate relief. "In a case involving the exercise of discretion, mandamus lies to compel action by a public official but not to dictate his decision *unless there has*

*been a clear abuse of discretion." Sutton v. Figgatt,* 280 N.C. 89, 93, 185 S.E. 2d 97, 99 (1971). (Emphasis added.) As stated by Barnhill, J. (later C.J.), speaking for our Supreme Court, "[w]hen an officer acts capriciously, or in bad faith, or in disregard of law, and such action affects personal or property rights, the courts will not hesitate to afford prompt and adequate relief." *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 315, 22 S.E. 2d 896, 900 (1942). Moreover, it should be noted that under G.S. 150A-51 the court is given the power not only to reverse but also to *modify* a final agency decision *if the substantial rights of the petitioners may have been prejudiced because the agency findings or conclusions are arbitrary and capricious.* Such is the case here. An impartial study of the entire record in this case compels the conclusion that the Commissioner of Insurance abused the powers granted to him by the General Assembly when he arbitrarily and capriciously denied the petitioners the relief to which all of the competent evidence shows they were clearly entitled.

The order of Judge Godwin here appealed from is

Affirmed.

Judges BRITT and VAUGHN concur.