240 S.E.2d 460 (1977)
34 N.C. App. 619
OCCIDENTAL LIFE INSURANCE COMPANY OF NORTH CAROLINA and Olic Holding Corporation, Petitioners,
v.
John R. INGRAM, Commissioner of Insurance, State of North Carolina.
No. 7710SC861.
Court of Appeals of North Carolina.
December 7, 1977.
*467 Ragsdale, Liggett & Cheshire by George R. Ragsdale, Peter M. Foley, William J. Bruckel, Jr., and Michael A. Swann, Raleigh, for petitioners appellees.
Atty. Gen. Rufus L. Edmisten by Asst. Atty. Gen. Isham B. Hudson, Jr., Raleigh, for respondent appellant.
PARKER, Judge.
Two basic questions are presented by this appeal: First, whether the record adequately supports the court's findings and its conclusion that the respondent Commissioner of Insurance acted arbitrarily and capriciously when he disapproved petitioners' proposed plan of exchange, and, if that question be answered in the affirmative, second, whether the court exceeded its power and authority by issuing its mandatory injunction requiring the respondent to approve the plan. We answer the first question in the affirmative and the second in the negative, and accordingly we affirm the trial court's order.
By Ch. 938 of the 1967 Session Laws, our General Assembly enacted Art. 6A of G.S. Ch. 58. That statute sets forth the procedure to be followed when the directors and stockholders of a domestic insurance company with capital stock desire to effect a corporate reorganization so as to bring their company under a holding company type of corporate structure. Such a reorganization may result in very substantial advantages to the domestic insurance company and to its stockholders, as the record in this case clearly demonstrates. By enacting Art. 6A of G.S. Ch. 58, our General Assembly has recognized, and in so doing has established as the public policy of this State, that it is entirely proper for a domestic insurance company and its stockholders to enjoy those advantages, provided the protective procedures prescribed in the statute are followed. Petitioners in this case have followed all prescribed statutory procedures.
Because there may be circumstances, not shown on the present record, in which such a corporate reorganization might work to the detriment of the domestic insurance company or its shareholders or policyholders, the statute provides that the corporate reorganization can be accomplished only after notice is given to all shareholders and to the public of a public hearing which the Commissioner of Insurance is directed to hold. At such a hearing any interested party has the right to appear and to become *468 a party to the proceedings. The statute, G.S. 58-86.4(2), then provides:
The Commissioner shall issue a written order approving the plan of exchange as delivered to him by the domestic company and the acquiring corporation and such modification therein as the board of directors of each such corporation shall approve, if he finds (i) that the plan, including all such modification, if effected, will not tend adversely to affect the financial stability or management of the domestic company or the general capacity or intention to continue the safe and prudent transaction of the insurance business of the domestic company, or of the acquiring corporation, if it is a domestic insurance company; (ii) that the interests of the policyholders and shareholders of the domestic company, and, if the acquiring corporation is a domestic insurance company, the policyholders of the acquiring corporation are protected; (iii) that the terms and conditions of the plan of exchange and the proposed issuance and exchange are fair and reasonable; and (iv) that the plan of exchange is consistent with the law and will not conflict with the public interest. If the Commissioner fails to approve the plan, he shall state his reasons for such failure in his order made on such hearing.
Any order issued by the Commissioner hereunder shall be subject to court review in accordance with the provisions of G.S. 58-9.3.
It will thus be seen that, in the context of the present case, the above quoted portion of G.S. 58-86.4(2) mandates that "[t]he Commissioner shall issue a written order approving the plan of exchange" (emphasis added), if, after holding the prescribed public hearing, he finds four things: (1) that the plan, if effected, will not tend adversely to affect the financial stability or management of the domestic insurance company or its general capacity or intention to continue the safe and prudent transaction of its insurance business; (2) that the interests of policyholders and shareholders are protected; (3) that the terms and conditions of the plan are fair and reasonable; and (4) that the plan is consistent with law and will not conflict with the public interest.
In the present case all of the detailed, complete, and voluminous evidence presented at the public hearing would support a favorable finding on each of the above four things. No shareholder or policyholder appeared at the public hearing in opposition to the plan. Members of the professional staff of the Insurance Department were present and participated in that public hearing. After reviewing the record, this professional staff recommended in writing entry of an order making favorable findings on the above four things. Nevertheless, after all of these proceedings had been completed and after a suit had been commenced in Superior Court to compel him to take some action one way or the other, the respondent Commissioner of Insurance, according to his own testimony given in his deposition taken on 12 September 1977, had never, as of that date, read the original petition or the proposed plan of exchange which had been on file in his office since 8 June 1977, had never read the transcript of the public hearing held by his hearing officer on 19 July 1977, and had never seen the written recommendation prepared by the professional staff of his Department. Yet eight days later, on 20 September 1977, he issued his order disapproving the plan.
The respondent's conclusion in his 20 September 1977 order that petitioner's plan is not in the public interest was based primarily on his Findings of Fact 7, 8, 12, 13 and 14. Finding of Fact No. 7 refers to a "Report of Examination" of Occidental for the years ending 31 December 1971 and 31 December 1972 which, according to the Finding, "indicates that the company had seriously depleted surplus as of December 31, 1971 which was substantially improved by December 31, 1972." The "Report of Examination" referred to was not introduced in evidence at the public hearing held 19 July 1977, and it does not appear in the record before us. Presumably it was a document in the files of the Insurance Department *469 of which respondent was taking official notice. If so, the respondent failed to comply with G.S. 150A-30 by making this known to petitioners "at the earliest practicable time" as required by that statute. More importantly, if the information in the document was relevant at all to the present inquiry, it was only remotely so as a matter of historic interest. Of far greater relevance were the facts, which respondent chose to ignore, that Occidental has earned in excess of one million dollars after taxes in each of the last four years, that from 1972 to the present it has shown a continuous and consistent increase in surplus, and that at the present time it is in an extremely strong financial condition. Similarly, respondent's Finding of Fact No. 8, that from 1970 through 1976 the management of Occidental has undergone a number of changes and that since 1970 six different people have held the office of President, if relevant at all to the present inquiry, is surely far less relevant than the fact, which is fully established by the record but which respondent chose to ignore, that during the most recent portion of that period Occidental has enjoyed a stable and extremely successful executive management. As to respondent's Findings of Fact 12, 13, and 14, there is simply no evidence in the record on which these could be based. In particular, nothing in the record supports respondent's finding in his Finding of Fact No. 13 that the "great amount of flexibility" in management provided by the holding company organizational framework "has caused harm to many North Carolina policyholders of other companies." The three "other companies" named in this finding are nowhere else mentioned in the entire record before us, and respondent has pointed to nothing which supports this finding. Finally, insofar as respondent's "Findings of Fact" are not factual findings at all but represent merely respondent's opinion as to the inadvisability of a holding company organizational structure as a matter of public policy, we point out that the General Assembly itself determined the public policy of this State as being not inhospitable to a holding company organizational structure for domestic capital stock insurance companies when it enacted Art. 6A of G.S. Ch. 58, and nothing in the statute grants the respondent any power to change the public policy of this State as adopted by its General Assembly.
In summary, the evidence in this record shows that for many weeks after the documents were available to him, the respondent Commissioner of Insurance failed even to read the petitioners' petition, the proposed plan of exchange, the transcript of the public hearing conducted thereon, or the written recommendation made by the professional staff of his own Department; that he delayed and failed to render any decision until compelled to do so by a court order; that he then issued an order disapproving the plan on the basis of findings of fact, some of which are totally unsupported by any evidence while others are of only remote relevance; and that he refused to make findings of fact favorable to petitioners even though such findings are fully supported by a mass of convincing and uncontradicted evidence. We hold that the evidence fully supports the trial court's findings and its conclusion that the respondent acted arbitrarily and capriciously when he disapproved petitioners' proposed plan of exchange.
We now consider the second question presented by this appeal, whether the trial court exceeded its power and authority by issuing its mandatory injunction requiring the respondent to approve petitioners' plan. We hold that it did not. G.S. 58-86.4(2) provides that any order issued by the Commissioner of Insurance thereunder "shall be subject to court review in accordance with the provisions of G.S. 58-9.3." The scope of judicial review provided by G.S. 58-9.3 is somewhat limited, subsection (c) of that statute providing merely that "[t]he trial judge shall have jurisdiction to affirm or to set aside the order or decision of the Commissioner and to restrain the enforcement thereof." A substantially broader review is provided by G.S. Ch. 150A, our Administrative Procedure Act. G.S. 150A-43, which appears in Article 4, *470 entitled "Judicial Review," of G.S. Ch. 150A, provides that any person aggrieved by a final agency decision who has exhausted all administrative remedies is entitled to judicial review under that Article, "unless adequate procedure for judicial review is provided by some other statute, in which case the review shall be under such other statute." In determining what is "adequate procedure for judicial review," as those words appeared in our former statute, G.S. 143-307, our Supreme Court held that an adequate procedure for judicial review exists "only if the scope of review is equal to that under G.S. Chapter 143, Article 33, 143-306 et seq." Jarrell v. Board of Adjustment, 258 N.C. 476, 480, 128 S.E.2d 879, 883 (1963). Effective 1 February 1976, G.S. 143-307 was replaced by G.S. 150A-43, and we now hold that "adequate procedure for judicial review," as those words appear in present G.S. 150A-43, exists only if the scope of review is equal to that under present Article 4 of G.S. Ch. 150A. Since the scope of review provided in Art. 4, G.S. Ch. 150A is substantially broader than that provided by G.S. 58-9.3, we also hold that the scope of judicial review applicable in the present case is that provided for in Art. 4 of G.S. Ch. 150A.
G.S. 150A-51, entitled "Scope of review; power of court in disposing of case," provides:
The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:
* * * * * *
(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or
(6) Arbitrary or capricious.
If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification.
Respondent's counsel has correctly pointed out in his brief that "[t]he General Assembly has vested the Commissioner of Insurance, not the Superior Court, with the power to determine if the proposed exchange of stock meets the standards prescribed by G.S. 58-86.4." However, the powers conferred upon the Commissioner of Insurance by G.S. 58-86.4 are not so broad as to permit him arbitrarily to refuse to make findings favorable to petitioners when all of the evidence supports such findings and there is no competent evidence to the contrary. A clearly implied condition upon the powers conferred upon the Commissioner by G.S. 58-86.4 is that he will exercise them in good faith. If, as here, he acts arbitrarily, petitioners are not left helpless, nor are the courts powerless to grant them adequate relief. "In a case involving the exercise of discretion, mandamus lies to compel action by a public official but not to dictate his decision unless there has been a clear abuse of discretion." Sutton v. Figgatt, 280 N.C. 89, 93, 185 S.E.2d 97, 99 (1971). (emphasis added). As stated by Barnhill, J. (later C. J.), speaking for our Supreme Court, "[w]hen an officer acts capriciously, or in bad faith, or in disregard of law, and such action affects personal or property rights, the courts will not hesitate to afford prompt and adequate relief." Pue v. Hood, Comr. of Banks, 222 N.C. 310, 315, 22 S.E.2d 896, 900 (1942). Moreover, it should be noted that under G.S. 150A-51 the court is given the power not only to reverse but also to modify a final agency decision if the substantial rights of the petitioners may have been prejudiced because the agency findings or conclusions are arbitrary and capricious. Such is the case here. An impartial study of the entire record in this case compels the conclusion that the Commissioner of Insurance abused the powers granted to him by the General Assembly when he arbitrarily and capriciously denied the petitioners the relief to which all of the competent evidence shows they were clearly entitled.
The order of Judge Godwin here appealed from is Affirmed.
BRITT and VAUGHN, JJ., concur.
*471 Report per Rule 30(e).
It is further ordered that in the event the Supreme Court of North Carolina denies further appellate review, this opinion will be published in full in the "Court of Appeals Reports."